BOWES, Judge,
concurring in part and dissenting in part:
I concur with the majority that a fired employee can proceed with a defamation suit in a state court without first going through a grievance procedure. However, I respectfully dissent from that portion of the opinion which holds that the letter written by an Ebasco Services supervisor was defamatory and not protected by a qualified privilege.
In order to maintain an action in defamation, the following elements must be established: 1) defamatory words; 2) publication; 3) falsity; 4) malice, actual or implied; and 5) resulting injury. Cangelosi v. Schwegmann Bros., Etc., 390 So.2d 196 (La.1980); Health Unlimited v. Loyola University, 434 So.2d 133 (La.App. 5 Cir.1983); writ denied 435 So.2d 445 (La.1983); Cashio v. Holt, 425 So.2d 820 (La.App. 5 Cir.1982); writ denied 430 So.2d 94 (La.1983). It is well established in Louisiana jurisprudence that a plaintiff must prove all five of these essential elements in order to prevail in an action for defamation. Health Unlimited v. Loyola University, supra. The available defenses against an action in defamation are 1) privilege and 2) truth. Desselle v. Guillory, 407 So.2d 79 (La.App. 3 Cir.1981), writs denied 412 So.2d 83 and 412 So.2d 84 (La.1982).
The threshold question in this case before us is whether the words in the letter are defamatory, that is, capable of a defamatory meaning. Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2 Cir.1975).
The court in Weatherall v. Dept. of Health & Human Res., 432 So.2d 988 (La.App. 1 Cir.1983), writ denied 437 So.2d 1150 (La.1983) provided a definition of defamation, with which I agree:
‘A statement is defamatory when it tends to expose a person to contempt, hatred, ridicule or obloquy; or which causes a person to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person’s reputation, either generally or with respect to his occupation. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. The test is the effect the article is fairly calculated to produce and the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate.’
Brown v. News-World Publishing Corp., 245 So.2d 430, 432 (2nd Cir.1971).
“In deciding whether the words are capable of a defamatory meaning the publication must be read as a whole. Kihneman v. Humble Oil & Refining Company, 312 F.Supp. 34 (E.D.La.1970); Otero v. Ewing, 162 La. 453, 110 So. 648 (1926); Tate v. Nicholson Publishing *1288 Company, 122 La. 472, 47 So. 774 (1908). The words must be construed according to the meaning that will be given them by reasonable individuals of ordinary intelligence and sensitivity. Their significance must not be distorted to give an unusual meaning, and they are to be understood only in the context in which they were used and in the manner shown by the circumstances under which they were used. Otero v. Ewing, 162 La. 453, 110 So. 648 (1926); Sterkx v. Sterkx, 138 La. 440, 70 So. 428 (1915). [Emphasis supplied]
Appellee argues that a reading of the Wills’ letter (copied in its entirety in the opinion) leaves no doubt that the people listed were fired as a result of the finding of some contraband connected with them. I disagree.
Mr. Baudoin’s employment apparently was terminated because a “crab pot and valves” made of company materials were found in his tool box, hidden in a burlap sack. However, the letter signed by Mr. Wills does not accuse Mr. Baudoin of theft, nor anything else. It merely states facts which are true: 1) that a search was made of certain areas and, 2) as a result of the search, certain members of the union are no longer permitted on the work site. It does not even state a search was made of a tool box to which Mr. Baudoin had access, nor that a crab boiler (or anything else) was found therein, nor any connection between Baudoin and the crab boiler. In fact, the letter appears to intentionally avoid any accusation or defamation of Bau-doin. Thus, it appears to me that Baudoin failed to prove (1) defamatory words, (2) falsity and (3) malice. It is even doubtful that he suffered any injury as a result of this letter.
Therefore, I find that at least three of the threshold elements for defamation were not met in this case. It follows, in my opinion, that the learned trial judge’s conclusion is manifestly erroneous.
Accordingly, I respectfully dissent from that portion of the opinion of my esteemed colleagues, which holds the appellants were guilty of defamation. I would hold that they are not and would reverse the trial judge’s ruling in that regard, as well as her award of damages.